```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :         01-cr-1110 (LAP)
         -v.-                       :
                                    :         MEMORANDUM
                                    :         & ORDER
ROSALIE GARCIA,                     :
                                    :
              Defendant.            :
------------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Rosalie Garcia's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release, (dkt. no. 160 (the "Motion")), the Government's opposition, (dkt. no. 182), and Defendant's reply, (dkt. no. 184).  In her reply, Defendant raised a new argument – the need to care for her son who suffers from mental disabilities.[1]  (Id.)  The Court ordered that the Government respond to that argument, (dkt. no. 203), and it did so on December 5, 2024 (dkt. no. 217).  Defendant replied on January 6, 2025, (dkt. no. 220).  The Court ordered that Defendant provide additional information, (dkt. no. 221).  Defendant filed a letter, (dkt. no. 224).  The Government filed a response, (dkt. no. 225).  Defendant replied, (dkt. no. 226).  For the reasons set out below, the Motion is GRANTED.

---

[1] To maintain the son's privacy, he will be referred to as John Doe throughout this Order.

1

**I.   Background**

Defendant is 73 years old.  On September 27, 2005, Defendant was indicted on counts of racketeering, in violation of 18 U.S.C. § 1962(c) (Count 1); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to commit murder in aid of racketeering activity, in violation of 18 USC § 1959(a)(5) (Count 3); murder in aid of racketeering activity, in violation of 18 U.S.C. §§ 1959(a)(1) and 1959(a)(2) (Count 4); murders committed on or about February 21, 1994, and November 7, 1997, while engaged in a narcotics offense, in violation of 21 U.S.C. § 848(e)(1)(A), and 18 U.S.C. § 2 (Counts 6-8); using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 9); using a firearm during and in relation to a crime of violence and thereby causing the death of a person, in violation of 18 U.S.C. §§ 924(j) and 2 (Count 10); conspiracy to distribute one kilogram and more of heroin and cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 (Count 11); and using and carrying a firearm in furtherance of the conspiracies charged in Counts 1 and 11, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 12).  (See PSR at ¶¶ 1-22.)

On December 6, 2005, following a jury trial, the Defendant was found guilty of Counts 1 through 4 and Counts 6 through 12.  (Id. at ¶ 23.)  On June 9, 2006, the Court sentenced her to life

imprisonment to be followed by a term of 25 years' imprisonment and five years of supervised release.  (See Ex. 1, dkt. no. 182 ("Sent. Tr."), 25:5-14.)  At sentencing, the Court emphasized "the seriousness of the crimes here," which involved "taking the lives not just of one person but of three."  (Id. at 20:14-15, 17-18.) The Court also explained that "the killings were ordered in the coldest blood as part of a war between criminal gangs to control turf for the sale of narcotics."  (Id. at 20:21-24.)  With respect to the extent of Defendant's criminal conduct, the Court stated at sentencing that Defendant "had been a professional criminal for over a decade" and that her "crimes have been multiple and continuous" and, therefore, "call for an extremely severe sentence to mark the seriousness of the offenses as well as the need for deterrence."  (Id. at 21:4-9.)

Defendant is currently serving her sentence at FCI Tallahassee.  On May 16, 2021, she submitted a request for compassionate release to the Bureau of Prisons ("BOP") seeking early release on the grounds that she suffers from several chronic medical conditions that increase her risk of becoming seriously ill from COVID-19.  (See Ex. 2, dkt. no. 182.)  The BOP denied her request on July 16, 2021.  (See Ex. 3, dkt. no. 182.)

Because of her sentence to life imprisonment, Defendant does not have a projected release date.  As of April 1, 2025, there are zero active cases of COVID-19 among FCI Tallahassee's 1205 inmates.

3

(See Fed. Bureau of Prisons ("BOP"), Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Apr. 1, 2025).

## II.  The Motion

On March 24, 2022, Defendant filed the instant motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Motion.)

In the Motion, Defendant argues that the Court should grant her compassionate release because she runs an increased risk of severe illness from COVID-19 due to her age and chronic health conditions.  (Id. at 2.)  She also argues that several other factors unrelated to COVID-19 represent "extraordinary and compelling reasons" to reduce her sentence, including (i) her "conscientious effort to change her life and to prepare herself for productive endeavors outside of her prison environment," and (ii) an alleged sentencing disparity between Defendant's sentence and those of other "defendants whose conduct is similar or worse than" hers.  (Id. at 16-17).  In her reply and subsequent letters, Defendant argues that she should be released to care for her 40-year-old son who suffers from mental disabilities.  The Government argues that Defendant has not exhausted her administrative remedies as to all issues, that she has not presented extraordinary and compelling reasons for release, and that the Section 3553(a) factors counsel against release.

4

III. **Applicable Law**

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except that"

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

5

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28, 254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3-4 (S.D.N.Y. Sept. 30, 2024). The amended Section 1B1.13 provides that the defendant's family circumstances can be extraordinary and compelling where there is (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition"; (ii) "[t]he incapacitation of the defendant's spouse or registered partner

7

when the defendant would be the only available caregiver for the spouse or registered partner"; (iii) "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent"; or (iv) the foregoing circumstances "exist involving any other immediate family member," including the individuals listed in (i) through (iii), "as well as a grandchild, grandparent, or sibling of the defendant," for which "the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3). In assessing whether a defendant's family circumstances constitute extraordinary and compelling reasons, "courts generally require a showing of 'evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions.'" United States v. Lindsey, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (citing United States v. Ayala, No. 16 Cr. 809 (VM), 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020)).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy

8

statements. See 18 U.S.C. § 3582(c)(1)(A). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable section 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

**IV. Discussion**

    **a. Administrative Remedies**

The Government contends that Defendant has not exhausted her administrative remedies because in her letter to the Warden she relied on the dangers of COVID-19, her age, and her chronic conditions while in the Motion and Reply, she adds her efforts to change her life, alleged sentencing disparities with others "whose conduct is similar or worse than hers," and the need to care for her son who suffers from mental disabilities.  (Dkt. nos. 160, 184, 220.)

While courts in this district have not been of one mind as to whether Section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release, e.g., United States v. Gunn, No. 06 Cr. 911, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022), the Court adopts Judge Sidney H. Stein's well-reasoned analysis in United States v. Torres, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020), holding the contrary – that issue exhaustion is not required.  Accordingly, the Court finds that Defendant has exhausted her administrative remedies.

    **b. Extraordinary and Compelling Reasons**

In the Motion, Defendant argues that she runs an increased risk of severe illness from COVID-19 due to "diminished" health and advanced age.  (Motion at 2, 18.)  Defendant is now 73 years

10

old, and she argues that she "suffer[s] from chronic illnesses such as scleroderma with mullahcracies [sic], rheumatoid arthritis, PTSD, and [c]hronic depression," in addition to "chronic muscle and bone pain." (Id. at 18.)  Defendant also argues that she has turned her life around and contributes positively to the prison community and that reducing her sentence to time served would bring her sentence into alignment with the sentences of others convicted of committing similar crimes. (Id. at 16.)  The Court rejects these arguments.

First, Defendant's advanced age alone is not an extraordinary and compelling reason for her release.  Indeed, Defendant's sentence of life imprisonment specifically contemplated that she would spend the rest of her natural life in prison. In addition, Defendant's pre-existing medical conditions do not constitute extraordinary and compelling reasons for a reduction of her sentence.  The decreased prevalence of COVID-19 in the prison population in conjunction with widespread vaccine availability has changed the risk analysis.  The risk has been largely mitigated. Having been fully vaccinated, Defendant cannot establish extraordinary and compelling reasons for her release based on her pre-existing medical conditions and COVID-19.  See, e.g., United States v. Barnett, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021); United States v. Arbabsiar, No. 11 Cr. 897 (JFK), 2021 WL 2433757, at *3 (S.D.N.Y. June 15, 2021); United

11

States v. Santana, No. 18 Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021). Furthermore, Defendant presents no evidence that her current facility is unable to treat her symptoms effectively or that she is unable to care for herself. See United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication.").

Second, as to Defendant's rehabilitation and re-entry plan, while Defendant is to be commended for staying out of trouble in prison since she was sentenced in 2006, "rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" warranting a reduction in sentence. United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)). Accordingly, even if it were the case that Defendant had shown extraordinary rehabilitation, that rehabilitation alone would not provide a basis for release.

Third, Defendant's sentencing disparity argument is also unavailing. Defendant cites to multiple cases in which defendants received more lenient sentences despite being guilty of conduct that she asserts was not "materially different" from hers. (Motion at 18.) None of the convictions that Defendant identifies,

however, involves the murder of three people. As the Court emphasized at sentencing, Defendant's "crimes have been multiple and continuous, and they call for an extremely severe sentence to mark the seriousness of the offenses as well as the need for deterrence." (Sent. Tr. at 21:6-9.) In addition, Defendant's life sentence is mandated by 18 U.S.C. § 1959(a)(1), for which the only other statutorily authorized sentence is the death penalty, and 21 U.S.C. § 846. Reducing Defendant's sentence therefore would create, not resolve, a disparity in sentencing for defendants convicted of murder in aid of racketeering. See, e.g., United States v. Amato, 48 F.4th 61, 66 (2d Cir. 2022) (affirming district court's rejection of defendant's argument that his life sentence for murder in aid of racketeering created an unwarranted sentencing disparity with similarly situated defendants).

While the Court rejects most of Defendant's arguments, as noted above, the Court finds Defendant's family circumstance extraordinary and compelling. United States v. Lindsey, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions." (internal quotations and citations omitted)). Defendant has provided the Court with evidence that her son, John Doe, is currently "incapacitated" for purposes of U.S.S.G. § 1B1.13. John Doe has

13

been diagnosed as morbidly obese, pre-diabetic, and has high cholesterol. (Dkt. no. 224 at 1.) He suffers from severe depression. (Id.) Defendant's other sons have described that John Doe is unable adequately to care for himself due to his mental illness. (Id. at 2.)

Additionally, Defendant has shown that she is the sole available caregiver to John Doe. Narmos Roman and Israel Roman, John Doe's brothers, are unable to care for him, due to their own life responsibilities. (Id.) Eric Roman, John Doe's brother, was primarily responsible for him but Mr. Roman suffered a heart attack and moved to Connecticut, so he is unable to continue care for John Doe. (Id.)

Accordingly, the Court finds that Defendant's family circumstance is extraordinary and compelling and therefore warrants release.

### c. The Section 3553(a) Factors

Finally, even though Defendant showed extraordinary and compelling reasons for release, the Court must consider the section 3553(a) factors.

As the Court noted at sentencing, Defendant's crimes involved "taking the lives not just of one person but of three." (Ex. 1, dkt. no. 182 at 20:14-15, 17-18.) The Court noted that "the killings were ordered in the coldest of blood as part of a war between criminal gangs to control the turf for the sale of

narcotics." (Id. at 20:21-24.)  And the Court noted that Defendant "had been a professional criminal for over a decade" and that "her crimes have been multiple and continuous" and, therefore, "call[ed] for an extremely severe sentence to mark the seriousness of the offenses as well as the need for deterrence." (Id. at 21:7-9.)  The Court's observations at sentencing remain just as true today.  However, in light of the fact that Defendant has served many years in prison, she is 73 years old, and she is now the sole available caretaker for her disabled son, the need for individual deterrence is not great because the likelihood of recidivism is diminished.

## V. Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 160), is GRANTED, and her sentence is reduced to time served. Defendant shall be released one week from this date.

The Clerk of the Court shall close dkt. nos. 160 and 224 and mail a copy of this Order to Defendant.

**SO ORDERED.**

Dated:   New York, New York
         April 3, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge